Reese J.
delivered the opinion of the court.
The question is, whether the charge of the circuit court in this case is in point of law correct.
In the year 1795, a jury, in the ease of The State v. Long reported in 1 Hay. Rep. 154, found a special verdict, which in substance stated, that Long borrowed a mare of Parks to ride to the house of Candles about four miles from that of Park’s, and was to have returned her to Parks after riding thither; that he did ride her to the house of Candies, but did not return her to Parks, but forthwith rode her into the county of Lincoln, a distance of eighty miles from the house of Candles, and then sold her to one flay le, as his own property; that he did not take or get the mare into his possession, otherwise than as stated. That the said Long, when he so got the possession, did the same with the fraudulent intention not to return the said mare to Parks, but to sell and dispose of her as stated, and they submit to the court, the question, whether such taking amounted to felony, or not. Tv.o Judges, Ashe and Macay, were of opinion that it amounted to felony, and the other two Judges, Williams and Haywood, were of opinion that it’ did not. One of these, Judge Haywood, (the reporter of the case,) appends to it a note, in which among other things he says. “The criminal coda above all others, should leave nothing to the discretion of the court or jury, but should be regulated as far as the nature of the thing will admit by fixed rules, not difficult to be understood, and incapable of being construed away. The rule laid down by Coke and Hale, Hawkins, and Blackstone, that there must be a taking invito domino, and that there can he no felony without a trespass, is a plain rule, comprehensible by every capacity, and in its nature not easy to be misconstrued, it leaves no latitude to the Judge nor any to the jury. The plain question is, is it a tortious taking. But should the question be, did he borrow or hire with an intent to steal? that being an act of the mind, and to be dis *405 covered by circumstances only, leaves the fate of the prisoner entirely in the discretion of the court and jury. In the case of a man of good character, or one they were inclined to favor a borrowing and selling afterwards as his own, might easily be deemed innocent, or at least excusable. He might be supposed to do it, with design to make a good bargain for the owner, and to deliver the money to him, or from confidence of his assent <&c., when before the same court and jury, another of but indifierent character, or where they were not disposed to favor, for borrowing and the selling, or for borrowing and not returning might be sentenced to death.” In another place, he adds, “with reasonable care in the owner, an oiTence of this kind can never happen. Let him not lend his property to a man ho doss not know, or in whom he cannot safely rely, and ho will never he deceived in this' manner. But if he will lend it to a stranger he does not know, and that stranger deceives him, he should blame his own imprudence; he has contributed to tho deception himself, and he has no right to expect the law to animadvert with the same severity on the conduct of the deceiver, as if himself had been perfectly passive. The man who has not trusted his property with precarious hands, and who docs what is usual to secure it, and yet has it invaded by a taking away without his consent, is surely more to be regarded than the man who has lent it?”
Such is part of the note in the case of The State v. Long, so often referred to in the discussions of the courts of this State.
Six years after the decision of the case of The State v. Long, came on the case of The State v. Braden, in this State 2 Ten. Rep. 68. Overton Judge, in that case, says, “that the rule laid down in the note to the case of The State v. Long, 1 Hay. 157, is correct law, and the reasoning in the note, though contrary to many late decisions in England is in-conti'overtable.” To constitute a felony, there must be a trespass in the original taking, which cannot be the case, where the property has been previously delivered.” White, Judge, “considered the oldlawas most correct, and that Judge Haywood’s opinion was the true one in a free country. It *406 was important that legal principles should be settled; where -the discretion of a Judge commences, there Law ceases?”
In the case of Reece Porter v. The State, Mar. and Yerg. 226, White Judge, who delivered the opinion of the court, says. “The common law as it stood in 1775, was adopted in this State, what that common law was, may be seen by reference to 1 Hayd. Rep. 157, in note, and the case of The State v. Braden, 2 Ten. Rep. 68.”.
In the case of The State v. Wright, 5 Yerg. 158, the authority of the above cases are incidentally acknowledged. The Judge who gives the opinion of the court in that case, states, that “to constitute larceny, there must be a trespass in the taking; that cannot be where the possession is obtained by consent of the owner, nor could it be, if the goods were lost because they would not in such case be in the owners possession, so as to make it possible a trespass could be committed in taking them, all that is said in the books therefore in rela? tion to the consent of the owner to part with his goods, .amounts only to this, to make a taking larceny, there must be a trespass, and as there can be no trespass where the party taking has the owners consent; so neither can there be larceny.” So, also, in the case of The State v. Hite, the Judge, who delivered the opinion of the court, says “it is certainly true, that to constiute the crime of larceny, a trespass in the original taking must have been committed upon the right owner, as is stated in the note, to the case of The State v. Long, 2 Hayd. 154: 2 Yerg. 68: and Mar. and Yerg. 226. The authority of these cases is admitted &c.”
Thus uniformly, for the last thirty years, has the opinion of Judge Haywood in the case of The State v. Long, been acknowledged and sanctioned by the courts of this State. We are fully aware, and readily admit, that the settled law of England, and of several States of our Union, is in conflict with the principles of that opinion, and it'may be also true, that a rigid analysis of the facts of the several cases referred to in this opinion, might prove, that to affirm the Judgment of the circuit court in the present case, would not overrule or unsettle the judgment in those cases as to the points raised by the-record. Rut there is no question, but that it *407 ⅞/ould be in opposition to the uniform' action of our courts and to tne uniform and unbroken tenor of judicial and professional opinion in this Slate. If we deemed it error, it would be án error, which we should not feel at liberty to correct: an error in the judicial action and opinion of all our courts and judges and lawyers for the last forty years; an error protective of the liberty and safety of the citizen, limiting the dangerous range of discretion in courts and juries, and tending to' place the distinctions of our penal code, upon broad and well marked lines. It in any case, we could apply the maxim comniunis error facit jus, if ought to be applied to such a case as this. But we are satisfied with the reasoning of the note' to the case of The State v. Long. The facts of that case, were stronger against the prisoner, than are those of the presi_ ent; Long borrowed the mare to go four miles, and return. It would hot have taken hint' more than two hours, he went •forthwith eighty miles. Here the Prisoner hired the horse" for two days, and paid the sum of two dollars. He swapped the horse in the vicinity of the place to which he alleged he' iVas going. There is but little doubt in either case, that thtf purpose was fraudulent.
There is a distinction drawn by the court in the charge tcf the jury, in the case before us, which we do not fully comprehend. They were told, that if there was a delivery of the' horse by the prosecutor to the prisoner, upon a contract of hiring, altho’ the prisoner at that time, within himself intended to convert the horse feloniously to his own use, if he practiced no fraud to procure the delivery, he was not guilty of larceny, as. there was no trespass. But if he did practice an artifice, falsehood and deception, it would make him á trespasser and fel<S; Why? In the case just put, the very contract of hiring would be fraud, artifice, falsehood and deception, which ought td^be as available, it would seem to “vitiate consent” as any collateral falsehood or artifice. It is safer and better we think, to adhere to the fixed and plain rules on the' subject of larc&y, heretofore, and for so long a’ time adopted and acted on in tins State.
Let-the Judgment be reversed, and a new trial be’ granted.-
Judgment reversed.